UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RAYMOND DARNELL #482404          CIVIL ACTION NO. 18-cv-785 SEC P

VERSUS          JUDGE FOOTE

DARREL VANNOY          MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Raymond Darnell ("Petitioner") had a years-long history of threats and attacks directed at Arlicia McDonald, his ex-girlfriend. Petitioner was found to be the father of Ms. McDonald's son and was ordered to pay child support. Several weeks later, the 22 year old Petitioner prepaid his funeral, then attacked Ms. McDonald with a shotgun. He did not stop until a policeman shot him.

A Caddo Parish jury convicted Petitioner of attempted first-degree murder of a police officer and attempted second-degree murder of Ms. McDonald. Petitioner was adjudicated a second felony offender. His previous conviction was based on a guilty plea to false imprisonment of Ms. McDonald with a dangerous weapon, which stemmed from an attack two years earlier. After lengthy proceedings, including a resentencing, Petitioner's final sentence was 90 years for attempted first-degree murder and 45 years for attempted second-degree murder. The sentences were to be served consecutively, and each was without benefit of parole, probation, or suspension of sentence.

Petitioner seeks federal habeas corpus relief on the grounds that his sentence violated the Eighth Amendment. He argues that he is not the most egregious of offenders among those convicted of attempted first-degree murder of a police officer, the trial court did not give reasons for imposing consecutive sentences, and the trial court failed to consider his alleged mental condition in mitigation. For the reasons that follow, it is recommended that his petition be denied.

**Relevant Facts**

Petitioner does not contest the facts, which are set forth in State v. Darnell, 988 So.2d 870 (La. App. 2d Cir. 2008) and State v. Darnell, 243 So.3d 1162 (La. App. 2d Cir. 2017), writ denied, 242 So.3d 1231 (La. 2018). The record shows that Petitioner had a pattern of criminal conduct and repeated harassment directed at Ms. McDonald, including the prior conviction for false imprisonment while armed with a dangerous weapon, which was plea bargained from an arrest for aggravated rape. A state court in Monroe ordered Petitioner to cease all contact with Ms. McDonald, and he was banned from the grounds of Mall St. Vincent in Shreveport (where she worked) and her apartment in Monroe.

About two and a half months before the attack at issue, Petitioner was found to be the father of McDonald's son and ordered to pay child support. On May 17, 2006, Petitioner made his own funeral arrangements and then followed Ms. McDonald from the mall after she got off work around 9:45 p.m. She noticed him and pulled alongside Shreveport Police Officer Freddie Clinton at a red light and told him that she was being followed by a green SUV, then she drove away before the light changed.

Officer Clinton heard a crash and saw that the green SUV had struck McDonald's car. He radioed for assistance and pursued. Officer Clinton saw the green SUV push McDonald's car into a pole, where it caught fire. McDonald got out of her car, ran across the street to Officer Clinton, and shouted that Petitioner had a gun.

Petitioner was armed with a .410 single-shot sawed-off shotgun. When he saw McDonald and Clinton across the street, he pointed the shotgun at them and fired. Clinton testified that he heard the pellets go by his head, and he returned fire while pulling McDonald behind his police car to take cover on the passenger side. Petitioner reloaded and moved to the driver's side of the police car. A second police vehicle, driven by Officer Josh Feliciano, arrived and stopped behind Clinton's car. The video from Feliciano's vehicle showed that the door on the driver's side of Officer Clinton's car was open. Petitioner alternately pointed the shotgun through the door and over the hood of the car, attempting to get a clear shot.

Officer Clinton returned fire but emptied his magazine. Petitioner took that opportunity to run around the front of the police car and point his shotgun at both Clinton and McDonald as Clinton tried to reload; the couple under attack started to run. Petitioner fired at close range and hit Ms. McDonald in the backside, rear upper thigh area. He then struck McDonald in the head with the stock end of his shotgun. Officer Feliciano fired several shots at Petitioner, and one of them hit him in the chest and knocked him to the ground. Petitioner resisted even then, requiring several distraction strikes from the officers before he would surrender the shotgun and be handcuffed. Petitioner then started

Page 3 of 16

screaming about his lawyer (his relative, Hersy Jones). Police found the two spent shotgun shells, and they found two live shells in the street and three live shells in Petitioner's SUV.

Judge Scott Crichton presided over the trial and the original sentencing. The court received letters from Ms. McDonald and the two police officers. Ms. McDonald wrote that the shooting required three surgeries and caused her several months of pain that prescription medicine would not relieve. She was unable to walk for several weeks, then had to rely on a walker for a time, and she still had numbness and minor pain in her leg and foot several months later. She was unable to work due to her injuries, and she lost her vehicle that night, so she had to rely on family to support her and her son.

The defense presented testimony from a funeral home employee who assisted Petitioner with his prearranged funeral, a psychiatrist who testified about Petitioner's mental health history, Petitioner's probation officer who described his anger issues related to being on probation and lack of contact with his son, and a neighbor who testified that Petitioner was a productive citizen. Petitioner made a statement and described how the victim had "ruined my life" and put him in a mental state that led to the attack, although he did apologize for his actions.

Judge Crichton recited the facts of the case at length, and he read the letters submitted at sentencing. He considered each of the sentencing factors mentioned in La. C.Cr.P. Art. 894.1, and he determined that Petitioner had earned the maximum possible consecutive sentence available under the habitual offender law and applicable statues. That was 100 years without benefits on count one and 50 years without benefits on count two. Tr. Vol. 7, pp. 1490-1554.

Petitioner argued on direct appeal that his sentence was excessive. The appellate court reviewed Petitioner's criminal history, the facts presented at trial, and the facts presented at the sentencing hearing. The court held that the assignment lacked merit because the maximum sentence did not shock a sense of justice. State v. Darnell, 988 So.2d at 878.

Petitioner later filed a post-conviction application that asserted several claims, including ineffective assistance of counsel. Judge Michael Pitman initially denied the application, but the appellate court granted the writ in part and remanded for an evidentiary hearing on ineffective assistance of counsel claims, including trial counsel's apparent conflict of interest discovered after investigation by appellate counsel. Vol. 11, pp. 2705-06.

On remand, Judge Pitman conducted a hearing. He denied relief on all but one claim. Attorney Hersy Jones, Petitioner's uncle, was his retained counsel. Jones had represented Jones' brother (Petitioner's father) in a child in need of care hearing that was based on allegations that Petitioner's father abused Petitioner. Jones was also responsible for presenting mitigation evidence at Petitioner's sentencing, which included potential evidence of an abusive and troubled upbringing. Out of an abundance of caution, Judge Pitman granted a new sentencing hearing. Tr. Vol. 12, pp. 2913-17.

Petitioner's second sentencing hearing was before Judge Ramona Emanuel, and he was represented at the hearing by attorney Christopher Hatch. Attorney Hatch stated that he had subpoenaed the records from a state agency that described how Petitioner and his siblings were removed from the parental home when they were young. The defense

presented testimony from Dr. Sarah DeLand, a forensic psychiatrist at Tulane University. Two of Petitioner's siblings testified about their childhood with an abusive father and the effects it had on Petitioner, who was the oldest of six children and tried to protect some of the younger children.

Dr. DeLand testified that, because of the abuse, Petitioner manifested symptoms of post-traumatic stress disorder, although she would not fully diagnose the condition due to a lack of information. She found that he had narcissistic personality traits and some paranoid personality traits that lend themselves to a conflictual existence with the world. Dr. DeLand noted that Petitioner had been sleeping with weapons for protection in the weeks before the incident, and he had greatly increased his alcohol intake and started smoking marijuana, when he had not been a substance abuser in the past. Petitioner told DeLand that after he went to the funeral home to make the arrangements, he went home and drank beer and placed the shotgun to his head. He then wrote letters before heading out to commit his criminal acts.

After hearing the evidence and receiving arguments from counsel, Judge Emanuel resentenced Petitioner to serve 90 years without benefits on count one and 45 years without benefits on count two. This was slightly less than the 100 and 50 year sentences originally imposed. She also stated that the sentences would run consecutively, with credit for time served. Judge Emanuel stated that she had looked particularly to Petitioner's need of correctional treatment or a custodial environment, and she ordered that he receive any and all mental health treatment for which he was eligible. Tr. Vol. 14, pp. 3506-71.

Petitioner filed an appeal and argued that the trial court erred in imposing excessive sentences. His brief cited three Louisiana decisions that affirmed lesser sentences for attempted first-degree murder when the defendant actually imposed serious injury on the officer. (The State notes that those cases were not habitual offender cases, where greater sentences are allowed.) Petitioner also argued that Louisiana law requires particular justification from the evidence of record to warrant consecutive sentences for crimes that arise from a single course of conduct. Finally, Petitioner argued that the trial court failed to take into consideration that he suffered from mental illness after years of physical abuse at the hands of his father. Tr. Vol. 14, pp. 3588-99.

The appellate court noted that the videos of the crime were compelling and disturbing; they showed Petitioner's violent and intentional pursuit of the victim despite him being fired upon by two police officers. He stopped his attack only after he was shot by one of the officers. The court reviewed Louisiana law regarding concurrent and consecutive sentences and conceded that the trial judge did not specifically state the factors she considered or the reasons for the imposition of the consecutive terms, but the record provided the appellate court an adequate factual basis to support the imposition of consecutive sentences. As for mental illness, the appellate court said that "even though the trial court did not specify mental illness as a mitigating factor in sentencing defendant, the record clearly shows that his condition was taken into account by the sentencing judge." But any mitigating effect of the mental issues and abuse was outweighed by the aggravating circumstances. State v. Darnell, 243 So.3d at 1167-69. The Supreme Court of Louisiana denied writs without comment. Tr. Vo, 15, pp. 3700.

**Exhaustion and Procedural Default**

A habeas applicant must claim a violation of a federal constitutional right. A claim that the trial court improperly applied state law does not constitute an independent basis for federal habeas relief. Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law."); Narvais v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).

Petitioner's memorandum filed with this court states that the federal question presented is whether his sentences violate the Eighth Amendment to the U.S. Constitution. But the body of his memorandum is largely a repeat of the same state-law arguments that he made in the brief filed with the state appellate court. If that brief does not fairly present a federal claim, then Petitioner has neither presented a viable federal claim to this court nor exhausted his state court remedies with respect to any federal claim.

The exhaustion requirement is based on the statutory provision that a writ of habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The requirement is designed to give the state courts a first opportunity to correct alleged violations of federal rights. Baldwin v. Reese, 124 S.Ct. 1347, 1349 (2004). To satisfy it, a prisoner must fairly present his federal claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting the state courts to the federal nature of the claim. Id; O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1732 (1999).

State courts are obligated to enforce federal law, so "they must be given the first chance—after the state prisoner fully explains the federal claim—to correct any error."

Lucio v. Lumpkin, 987 F.3d 451, 464 (5th Cir. 2021).  The federal claim must be fairly presented to the state courts to allow them that opportunity, and a prisoner may not change the nature of his claim from state to federal law along the way.  Lucio cited the example of Duncan v. Henry, 115 S.Ct 887 (1995), where the petitioner framed his objection in state court in terms of state evidentiary law, but in the federal courts he argued that the erroneous introduction of the evidence violated the Due Process Clause.  The Supreme Court held that the petitioner did not properly exhaust his Due Process Clause claim, even if he presented the state court with the facts and substance of his claim in other terms.

"[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Gray v. Netherland, 116 S. Ct. 2074, 2081 (1996).  And "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." Id.  The determination of whether a federal claim was fairly presented to the state courts is made by looking to the petitioner's briefs filed in state court (rather than the state court's decision).  Dye v. Hofbauer, 126 S.Ct. 6-7 (2005);  Smith v. Digmon, 98 S.Ct. 597 (1978).

Petitioner's appellate brief, as well as his writ application to the Supreme Court of Louisiana (Tr. Vol. 15, pp. 3648-61) relied solely upon state law decisions that applied state procedural laws.  The lone reference to federal law was in a one-sentence paragraph that preceded the argument that mental illness should be considered as a mitigating factor.  Petitioner wrote: "The United States Supreme Court has noted the existence of the 'belief, long held by this society, that defendants who commit criminal acts that are attributable to

Page 9 of 16

a disadvantaged background or to emotional and mental problems, may be less culpable than defendants who have no such excuse.' Boyde v. California, 494 U.S. 370, 382, 110 S.Ct. 1190 (1990)." The Boyde decision made that comment in the course of denying a challenge to a jury instruction regarding the consideration of such factors in a capital case. The quoted language does not provide the basis for a stand-alone habeas claim, and it did not fairly present a federal claim to the state court that would satisfy the requirement to exhaust state court remedies.

"A fleeting reference to federal law within a lengthy state-law focused argument does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights." Norris v. Davis, 826 F.3d 821, 831 (5th Cir. 2016) (cleaned up), quoting Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001). A passing reference to the Fourteenth Amendment or U.S. Constitution of "due process of law" will not suffice. Id.

The undersigned has applied these principles to hold that the exhaustion of a state-law claim of excessive sentence under La. Con. Art. 1, § 20 is insufficient to exhaust a federal Eighth Amendment excessive sentence claim, even though the claims may be somewhat similar. Henry v. Keith, 2018 WL 1278913 (W.D. La. 2018); Thomas v. Warden, LSP, 2012 WL 3260223 (W.D. La. 2012). The same is true in this case. Petitioner made a single reference to one federal decision, which is not itself the basis for a claim, in the course of his arguments that were rooted in state sentencing law. That was not enough to fairly present the state courts with the Eighth Amendment claims that Petitioner now seeks to make in federal court.

If Petitioner were to return to state court and attempt to properly exhaust an Eighth Amendment claim of excessive or disproportionate sentence, the claim would be denied based on the holding in State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996) that the Louisiana post-conviction statute "provides no basis for review of claims of excessiveness or other sentencing error post-conviction." The holding also extends to post-conviction challenges to habitual offender proceedings. State v. Cotton, 45 So.3d 1030 (La. 2010). Federal courts have recognized Melinie as an independent and adequate procedural bar to federal habeas review of sentencing claims. Hull v. Stalder, 234 F.3d 706 (5th Cir. 2000) (unpublished); Coleman v. Goodwin, 2016 WL 4708246, *4 (W.D. La. 2016); Warfield v. Warden, Louisiana State Penitentiary, 2012 WL 3067604 (W.D. La. 2012).

In such cases, the federal court is to treat the issue as technically exhausted but subject to a procedural bar that cannot be overcome absent the showing of cause for the default and prejudice, or a fundamental miscarriage of justice. Young v. Davis, 835 F.3d 520, 525 (5th Cir. 2016); Jones v. Jones, 163 F.3d 285, 296 (5th Cir. 1998). The State, in its memorandum, challenged Petitioner's ability to make such a showing. Petitioner was allowed an opportunity to file a reply and attempt to make such a showing, but he did not file a reply.

"To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999). There are no such apparent causes for Petitioner's election to present his sentencing challenge in terms of state law rather than federal law. It is common for appellants to make a sentencing challenge based on Louisiana law, but this court sees

few cases in which an appellate sentencing challenge is based on the more demanding Eighth Amendment jurisprudence. That is not due to any external cause. It is simply a common and reasonable appellate choice.

To satisfy the fundamental miscarriage of justice exception, a petitioner must make a persuasive showing that he is actually innocent of the charges against him. Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001). Petitioner plainly cannot make such a showing. He does not contend that he is innocent of the attempted murder convictions or that he is undeserving of any sentence. The claims presented in his habeas petition are procedurally barred from review due to Petitioner's failure to exhaust state court remedies with respect to a federal claim and the lack of a showing adequate to overcome the resulting procedural bar.

**The Merits**

Petitioner's federal memorandum cited a state court decision that referred to federal Eighth Amendment jurisprudence regarding grossly disproportionate sentences.[1] That decision was not cited in the briefs filed in state court, so it does not help with respect to exhaustion. But it does arguably present an (unexhausted and barred) federal law claim to this court. Even if the federal claim were not procedurally barred, it would also fail on the merits. If a reviewing court were to disagree that the claim is barred, it should nonetheless deny relief on the merits. King v. Davis, 883 F.3d 577, 585 (5th Cir. 2018) (electing to

---

[1] State v. Randall, 741 So. 2d 852 (La. App. 3rd Cir. 1999), aff'd in part, rev'd in part, 776 So. 2d 424 (La. 2000). Petitioner cited the appellate court decision, but the Supreme Court of Louisiana reversed the portion of that opinion that granted relief from a mandatory life sentence for a 29 year old third felony offender who was convicted of simple robbery.

ignore the procedural bar and cut to the "core of the case," the merits of the underlying claims).

The Supreme Court has reviewed a number of lengthy sentences for multiple offenders. The best case for Petitioner is Solem v. Helm, 103 S.Ct. 3001 (1983), which struck down a sentence of life without parole for a man who was convicted of writing a "no account" check for $100 and who had three prior convictions for third-degree burglary, one prior conviction for obtaining money under false pretenses, one prior conviction of grand larceny, and one prior conviction of third-offense DWI. The majority found the sentence was significantly disproportionate to the crime, and Solem prevailed.

"In other cases, however, it has been difficult for the challenger to establish a lack of proportionality." Graham v. Florida, 130 S.Ct. 2011 (2010). In Harmelin v. Michigan, 111 S.Ct. 2680 (1991) the offender was sentenced to life without parole for possessing a large quantity of cocaine. A closely divided Court upheld the sentence. Another closely divided Court upheld a sentence of 25 years to life for the theft of a few golf clubs under California's three-strikes statute. Ewing v. California, 123 S.Ct. 1179 (2003).

The Court in Lockyer v. Andrade, 123 S.Ct. 1166 (2003) rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions, capped by felony petty-theft after he stole approximately $150 worth of videotapes. The sentence did not warrant habeas relief.

The state court determined after considerable discussion that the sentence in this case was appropriate even though it was near the maximum allowed by statute. None of

the Supreme Court decisions in this area have mandated the reduction of a lengthy sentence that involved a shooting and attempted murders such as presented here. Petitioner has not demonstrated that his sentence is disproportionate to sentences received by other offenders in Louisiana who committed similar crimes *and* were being sentenced as multiple offenders.

Petitioner next argues that the state court misapplied state sentencing law related to consecutive sentences, but that does not state a cognizable federal habeas corpus claim. See, e.g., Butler v. Cain, 327 Fed. Appx. 455, 457 (5th Cir. 2009) (claim that sentence violated state law is not cognizable in federal habeas proceeding.); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) ("... a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus.").

Finally, Petitioner argues that the court did not consider his mental illness. The judge who imposed the final sentence did not directly say that she considered it, but she heard extensive evidence on the issue and recommended that Petitioner be provided mental health services. The appellate court discussed the mental health evidence at length and found that the "record clearly shows that his condition was taken into account by the sentencing judge." The appellate court also found that any mitigating effects were outweighed by the aggravating circumstances. Petitioner has not cited authority for the proposition that the federal constitution mandates a state judge to consider mental health in a non-capital sentencing. Even if there were such law, it was reasonably satisfied in this case.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14)

days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

      THUS DONE AND SIGNED in Shreveport, Louisiana, this 22nd day of June, 2021.

Mark L. Hornsby<br>
U.S. Magistrate Judge